## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AMICAR MALDONADO MONTENGUDO** | : | **JURY TRIAL DEMANDED** |
| 522 W. PHILADELPHIA STREET | : | |
| YORK, PA 17401 | : | **No. 1:25-cv-01497** |
| **Plaintiff** | : | |
| **vs.** | : | |
| | : | |
| **STATE TROOPER** | : | |
| **PHILLIP S. PRONICK** | : | |
| **BADGE NUMBER 3540** | : | |
| 8000 BRETZ DRIVE | : | |
| HARRISBURG, PA 17112 | : | |
| | : | |
| **and** | : | |
| | : | |
| **STATE TROOPER** | : | |
| **DAVID LONG (SHIELD)** | : | |
| **BADGE NUMBER UNKNOWN** | : | |
| 8000 BRETZ DRIVE | : | |
| HARRISBURG, PA 17112 | : | |
| | : | |
| **and** | : | |
| | : | |
| **COLONEL CHRISTOPHER PARIS** | : | |
| 1800 ELMERTON AVENUE | : | |
| HARRISBURG, PA 17110 | : | |
| **Defendants** | : | |

## AMENDED COMPLAINT

### I.    INTRODUCTION

1.    Plaintiff, Amicar Maldonado Montengudo, brings this action for damages
pursuant to 42 U.S.C. § 1983 and Pennsylvania common law against
Defendants due to violation of Plaintiff's Fourth and Fourteenth Amendment
rights as a result of Defendants falsely imprisoning Plaintiff and bringing false
charges against him.

## II.    JURISDICTION AND VENUE

2.    This Court has jurisdiction over the federal claims brought under 28 U.S.C. §§ 1331 and 1343.

3.    This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 and the principles of pendant and ancillary jurisdiction.

4.    Venue is proper under 28 U.S.C. §1391(b) because the causes of action upon which the complaint is based arose in Lower Paxton Township, Pennsylvania, which is in the Middle District of Pennsylvania.

## III.    PARTIES

5.    Plaintiff, Amicar Maldonado Montengudo, is an adult citizen and resident of the Commonwealth of Pennsylvania, residing as captioned.

6.    Defendant, State Trooper Pronick, is believed to be an adult citizen and resident of the Commonwealth of Pennsylvania, was at all relevant times a state trooper for the Pennsylvania State Police Department, with a business address as captioned, who is being sued in his individual capacity.

7.    Defendant, State Trooper Long, is believed to be an adult citizen and resident of the Commonwealth of Pennsylvania, was at all relevant times a state trooper first class for the Pennsylvania State Police Department, with a business address as captioned, who is being sued in his individual capacity.

8.    Defendant, Colonel Paris, is believed to be an adult citizen and resident of the Commonwealth of Pennsylvania, was at all relevant times the Commissioner of the Pennsylvania State Police, with a business address as captioned, who is being sued in his individual capacity.

9.   At all relevant times, Defendants Pronick and Long were acting under color of state law, outside the course and scope of their employment, and pursuant to the policies, practices, and customs of the Pennsylvania State Police.

10.  At all relevant times, Defendant Colonel Paris acted or failed to act by and through his officers, including the individually named officers, Pronick and Long, then and there acting outside the course and scope of their employment, under color of state law, and pursuant to the policies, practices, and customs of the Pennsylvania State Police.

11.  Defendant Colonel Paris is the supervisor for Defendants Pronick and Long, and at all relevant times was ultimately responsible for hiring, training, supervising, disciplining, and otherwise managing employees of the Pennsylvania State Police, including but not limited to Defendants Pronick and Long.

## IV.   OPERATIVE FACTS

12.  On or about July 31, 2023, at approximately 1:30 p.m., Plaintiff was a front seat passenger in a vehicle registered to his fiancée, operated by Caonabo Rivas-Martes, traveling northbound on I-83 in Lower Paxton Township, Dauphin County, Pennsylvania.

13.  Plaintiff and Mr. Rivas-Martes had gone to PennDOT headquarters in Harrisburg to register a vehicle title for a 2020 Yamaha ATV and were on their way back to their respective homes.

14.  At the same time, date, and location, Defendant Pronick was operating a marked Pennsylvania State Police vehicle and initiated a traffic stop of Plaintiff's vehicle.

15. Despite claiming, pretextually, that he was stopping the vehicle due to window tint, Defendant Pronick called for backup, removed Mr. Rivas-Martes from the vehicle, and interrogated both Plaintiff and the operator by the side of the freeway.

16. Defendant Pronick first interrogated Mr. Rivas-Martes and investigated Mr. Rivas-Martes via the computer in his police vehicle, taking a substantial period of time to do so before bothering to request the registration and insurance documentation for Plaintiff's vehicle.

17. During these conversations, Plaintiff and Mr. Rivas-Martes informed Defendant Pronick of their purpose in Harrisburg and showed Defendant Pronick the vehicle title they had registered at PennDOT headquarters shortly before getting on the road, which was dated July 31, 2023.

18. During these conversations, Plaintiff also informed Defendant Pronick that the vehicle they were travelling in belonged to him and his fiancée.

19. During these conversations, it would have been apparent to Defendant Pronick that Plaintiff and Mr. Rivas-Martes did not speak English as their first language and there was a significant language barrier between them and Defendant Pronick.

20. Upon information and belief, Defendant Pronick does not speak Spanish. In the alternative, if Defendant Pronick does speak Spanish, he made no attempt to communicate with Plaintiff and Mr. Rivas-Martes in the native language with which they are fluent.

21. Upon information and belief, during these interrogations, Defendant Pronick was aware that Plaintiff and Mr. Rivas-Martes had been pulled over on I-78 by another state trooper less than one (1) year prior on August 11, 2022, and

during that prior incident, Plaintiff had given consent to search the vehicle, the vehicle was searched, there was no contraband in the vehicle, and Plaintiff and Mr. Rivas-Martes were released without further incident.

22. Upon information and belief, during these interrogations, Defendant Pronick was aware that neither Plaintiff nor Mr. Rivas-Martes have a criminal record.

23. Defendant Pronick asked Plaintiff for consent to search his vehicle, which Plaintiff freely gave to Defendant Pronick.

24. Defendant Pronick extended the vehicle stop beyond constitutionally permitted limits, rendering Plaintiff's consent to search legally invalid and Defendant Pronick's actions outside the scope of his employment.

25. During the search, Defendant Pronick discovered a pill bottle of white powder (baking soda) inside Plaintiff's lunch bag, along with some food.

26. The pill bottle was labeled, with Plaintiff's fiancée's name on the label.

27. Due to her name being on the vehicle's registration and Plaintiff already informing him that he shared the vehicle with his fiancée, Defendant Pronick was aware that the name on the label was that of Plaintiff's fiancée.

28. Plaintiff readily admitted that the pill bottle belonged to him and informed Defendant Pronick that the white powder inside was baking soda that Plaintiff uses to treat heartburn.

29. When Defendant Pronick further questioned Plaintiff about the baking soda, Plaintiff laughed and told Defendant Pronick that he could try some of the baking soda.

30. Plaintiff then requested that Defendant Pronick test the baking soda right away, but Defendant Pronick told Plaintiff that he did not have field testing equipment with him.

31. Plaintiff then requested to accompany Defendant Pronick to the State Police barracks for testing of the baking soda, which Defendant Pronick refused.

32. After approximately one-and-a-half hours, Defendant Pronick ended the vehicle stop, and Plaintiff again requested to accompany him to the State Police barracks for testing of the baking soda, which Defendant Pronick again refused.

33. At no time did Plaintiff request that Defendant Pronick return the baking soda to him.

34. At no time did Defendant Pronick or any other law enforcement officer cite or charge Plaintiff with any motor vehicle violation, including excessive tint.

35. Upon information and belief, it is not typical for drug couriers using "known drug smuggling corridor[s]" to travel with only a small amount of contraband in a container that can be indisputably connected back to themselves, their loved ones, or their family members and rather travel with wholesale amounts of contraband in non-descript containers to later be re-packaged for sale.

36. Upon information and belief, it is not typical for drug couriers using "known drug smuggling corridor[s]" to keep the contraband they are trafficking in their lunch bag, risking overdose via contamination of their food.

37. Upon information and belief, the Pennsylvania State Police conceive of essentially every busy interstate freeway in Pennsylvania as a "known drug smuggling corridor".

38. Defendant Pronick's claim that the location of the vehicle stop was a "known drug smuggling corridor" was nothing more than a pretextual attempt to create a sinister and suspicious air around Plaintiff and Mr. Rivas-Martes's innocent and normal travel on a busy freeway in order to justify racially profiling

Plaintiff and Mr. Rivas-Martes and conducting a pretextual stop, evidencing Defendant Pronick's knowledge that he lacked reasonable suspicion or probable cause.

39. Upon information and belief, it is not typical for drug couriers to repeatedly request law enforcement officers to test the substances they are trafficking.

40. Upon information and belief, it is not typical for drug couriers to make pit stops along their route for purposes of registering vehicle titles.

41. During Defendant Pronick's search of Plaintiff's vehicle, Defendant Pronick did not find any indicia of drug trafficking, including but not limited to excessive use of air fresheners, after-market modifications indicating hidden compartments, operation of a vehicle to which Plaintiff had no personal connection, failure of the vehicle's occupants to provide a lawful purpose for their travel, and paraphernalia to hide the appearance and odor of contraband.

42. On or about August 1, 2023, Defendant Pronick and/or Defendant Long conducted a preliminary test of the baking soda with an MX908 machine.

43. Upon information and belief, Defendants Pronick and/or Long failed, intentionally or recklessly, to properly calibrate the machine and/or otherwise properly prepare it for chemical testing.

44. Upon information and belief, Defendants Pronick and/or Long knew and/or should have known that the machine was not properly calibrated and/or otherwise properly prepared for chemical testing.

45. Upon information and belief, Defendants Pronick and/or Long failed to consider whether residue from a previous test or other cross-contamination, could cause the MX908 to return a false positive, which Defendants Pronick and/or Long knew and/or should have known to do as part of properly using the MX908.

46. Upon information and belief, an MX908 machine is prone to false positives when it is not properly calibrated and/or otherwise properly prepared for chemical testing, which Defendants Paris, Pronick and/or Long knew and/or should have known.

47. The MX908 machine allegedly returned a result of "Alarm Xylazine" and "Suspect Fentanyl".

48. A "Suspect" result from an MX908 machine is not a positive result but rather an indication that further testing is recommended, which Defendants Paris, Pronick and/or Long knew and/or should have known.

49. An "Alarm" result includes a readout of the mass spectrometry conducted by the MX908 machine, with a clear graphical comparison of a reference value and the values detected by the machine.

50. Here, the graphical comparison between the reference value for xylazine and Plaintiff's baking soda did not show matching spectrometric measurements.

51. Despite the above, Defendant Pronick later intentionally and falsely wrote in his affidavit of probable cause that the baking soda "was found to be Xylazine/Fentanyl", failing to indicate that he and/or Defendant Long had only conducted preliminary testing, omitting the lack of calibration and/or other failures to properly use the MX908 machine, and falsely implying that there had been a positive result for fentanyl.

52. Defendant Pronick also wrote in his affidavit that he "observed several indicators of criminal activity", which, as discussed above, was not the case.

53. Defendant Paris failed to properly train, supervise, and discipline Defendants Pronick and Long, resulting in a false positive from the MX908, which was a proximate cause of the violations of Plaintiff's rights.

54. Defendant Paris failed to properly train, supervise, and discipline Defendant Pronick, allowing Defendant Pronick to misrepresent and omit material facts from his affidavit of probable cause, which was a proximate cause of the violations of Plaintiff's rights.

55. On or about August 3, 2023, Defendant Pronick called Plaintiff and asked him to come to the State Police barracks in Harrisburg to retrieve the baking soda, falsely telling Plaintiff that the baking soda had been tested and conclusively established to not be contraband.

56. Plaintiff responded that Defendant Pronick could keep the baking soda because he had plenty at home.

57. The phone call then ended in a normal fashion, with both parties wishing the other farewell.

58. On or about August 23, 2023, Defendant Pronick's affidavit of probable cause, with the material misrepresentations and omissions described above, and request for an arrest warrant for Plaintiff were approved by a Magisterial District Judge on charges of manufacture, delivery, or possession of a controlled substance with intent to deliver and use or possession of drug paraphernalia.

59. On or about August 29, 2023, the baking soda was sent to the Pennsylvania State Police forensics lab for testing, where, on or about November 29, 2023, it was confirmed to be baking soda, or at least that it was not any sort of contraband.

60. Plaintiff had no knowledge of the arrest warrant.

61. On or about October 10, 2023, at approximately 10:00 p.m., Plaintiff landed at John F. Kennedy International Airport, located in Queens, New York, after arriving on a Delta Airlines flight from Santo Domingo, Dominican Republic.

62. At the above date, time, and location, Plaintiff entered the customs line and was interviewed about his course of travel and occupation by the customs agent.

63. At the above date, time, and location, the customs agent took Plaintiff to a room and handcuffed Plaintiff's hands to his own waist.

64. At the above date, time, and location, The Port Authority Police placed Plaintiff in a holding cell until 8:00 a.m. the following morning.

65. The next day, at approximately 9:00 a.m., Plaintiff was taken to New York City Criminal Court located in Queens County, where he met with a public defender and was held in various holding cells until being brought before a court at approximately 8:00 p.m.

66. Plaintiff's pregnant fiancée waited there the entire day hoping that he would be released and come home.

67. At approximately 11:00 a.m. the following morning, Plaintiff was placed on a bus to Rikers Prison located in Elmhurst, New York.

68. Plaintiff spent approximately fourteen (14) days at Rikers Prison before being transferred to Dauphin County Prison located in Harrisburg, Pennsylvania.

69. On or about October 24, 2023, at approximately 9:45 p.m., Plaintiff attended preliminary arraignment, where he learned from the judge that his criminal charges were the result of the traffic stop that occurred on July 31, 2023.

70. On the same date and time as above, Plaintiff paid his bond of $50,000.00 and was released from custody.

71. All charges brought against Plaintiff were withdrawn at a preliminary hearing on December 13, 2023, due to the lab tests confirming that the substance in Plaintiff's possession on July 31, 2023, was not contraband.

72. At all relevant times, Defendants were not aware of any facts from which probable cause or reasonable suspicion to conduct the initial traffic stop of Plaintiff's vehicle would arise.

73. At all relevant times, Defendants were not aware of any facts from which probable cause or reasonable suspicion to search Plaintiff's vehicle would arise.

74. At all relevant times, Defendants were aware that they lacked reasonable suspicion or probable cause to continue extending the traffic stop beyond the initial pretextual mission of addressing an alleged window tint issue.[1]

75. At all relevant times, Plaintiff did not act or fail to act in any manner that would, in the totality of the circumstances, create probable cause to seize his person or charge him with criminal offenses.

76. At all relevant times, Defendants knew that they lacked probable cause to seize Plaintiff's person or charge him with criminal offenses.

77. As a direct and proximate result of the above, Plaintiff has suffered emotional stress, anxiety, depression, harm, loss of enjoyment of life, anguish, and humiliation and may continue to suffer the same for an indefinite time into the future, to his great detriment and loss.

78. As a further direct and proximate result of the above, Plaintiff incurred various expenses, including but not limited to bail and attorney's fees.

---

[1] Plaintiff does not concede that his window tint was unlawful or otherwise established reasonable suspicion or probable cause to initiate the traffic stop.

79.  As a further direct and proximate result of the above, Plaintiff has suffered a loss of earnings and/or earnings capacity past, present, and/or future.

## COUNT I – 42 U.S.C. § 1983
### FOURTH AND FOURTEENTH AMENDMENTS—FALSE ARREST
### AMICAR MALDONADO MONTENGUDO v. TROOPERS PRONICK AND LONG

80.  All preceding paragraphs of this Complaint are fully incorporated herein by reference.

81.  Defendants Pronick and/or Long lacked probable cause to obtain a warrant authorizing the arrest of Plaintiff.

82.  In the warrant affidavit, Defendant Pronick made false statements and/or material omissions.

83.  Defendant Pronick made those false statements and/or omissions either deliberately or with reckless disregard for the truth.

84.  Defendant Pronick's false statements and/or omissions were material, or necessary, to the finding of probable cause for the arrest warrant.

85.  Due to the above conduct of Defendants, Plaintiff suffered a deprivation of liberty.

86.  The above-described acts and failures to act of Defendants Pronick and/or Long violated Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution, the laws of the United States and Commonwealth of Pennsylvania, and were in violation of 42 U.S.C. § 1983.

87.  The above-described acts and failures to act were so malicious, intentional, reckless, and/or recklessly indifferent to Plaintiff's rights and well-being that the imposition of punitive damages is warranted.

WHEREFORE, pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff Amicar Maldonado Montengudo demands compensatory and punitive damages against Defendants State

Troopers Pronick and Long, jointly and/or severally, to fairly and adequately compensate Plaintiff and punish and deter such conduct on the part of Defendants and others similarly situated, in addition to interest, costs, attorney's fees, delay damages, and all other appropriate relief.

**COUNT II – 42 U.S.C. § 1983**
**FOURTH AND FOURTEENTH AMENDMENTS - MALICIOUS PROSECUTION**
**AMICAR MALDONANDO MONTENGUDO V. TROOPERS PRONICK AND LONG**

88.    All preceding paragraphs of this Complaint are fully incorporated herein by reference.

89.    Defendants Pronick and/or Long intentionally, maliciously, and without probable cause, caused the Plaintiff to be subject to criminal proceedings.

90.    Plaintiff's criminal charges were all terminated in his favor.

91.    Defendants Pronick and/or Long had facts and circumstances available to them that would not warrant a prudent law enforcement officer to believe that probable cause existed to arrest Plaintiff and charge him with criminal offenses.

92.    Defendants Pronick and/or Long submitted an arrest warrant and criminal charges against Plaintiff prior to having a reliable test of the baking soda seized from Plaintiff's lunch bag.

93.    As a direct and proximate result of the malicious, intentional, and/or reckless actions of Defendants Pronick and/or Long, Plaintiff suffered a deprivation of liberty and damages which are described above.

94.    The above-described acts and failures to act of Defendants Pronick and/or Long violated Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution, the laws of the United States and Commonwealth of Pennsylvania, and were in violation of 42 U.S.C. § 1983.

95.    The above-described acts and failures to act were so malicious, intentional, reckless, and/or recklessly indifferent to Plaintiff's rights and well-being that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff Amicar Maldonado Montengudo demands compensatory and punitive damages against Defendants State Troopers Pronick and Long, jointly and/or severally, to fairly and adequately compensate Plaintiff and punish and deter such conduct on the part of Defendants and others similarly situated, in addition to interest, costs, attorney's fees, delay damages, and all other appropriate relief.

### COUNT III – 42 U.S.C. § 1983
### CONSPIRACY AGAINST RIGHTS
#### AMICAR MALDONANDO MONTENGUDO V. TROOPERS PRONICK AND LONG

96.    All preceding paragraphs are fully incorporated herein by reference.

97.    As demonstrated by their concerted conduct, Defendants Pronick and Long entered into an agreement or reached a meeting of the minds to violate Plaintiff's constitutional rights in the ways described above.

98.    Defendants Pronick and Long committed several overt acts in furtherance of this conspiracy, including but not limited to knowingly failing to calibrate or otherwise properly prepare the MX908 machine before testing the baking soda, including material misstatements in the affidavit of probable cause, and omitting material facts from the affidavit of probable cause.

99.    The actions of Defendants, Troopers Pronick and Long, were so malicious, intentional, reckless, or recklessly indifferent to Plaintiffs rights and well-being that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff Amicar Maldonado Montengudo demands compensatory and punitive damages against Defendants State

Troopers Pronick and Long, jointly and/or severally, to fairly and adequately compensate

Plaintiff and punish and deter such conduct on the part of Defendants and others similarly

situated, in addition to interest, costs, attorney's fees, delay damages, and all other

appropriate relief.

**COUNT IV – 42 U.S.C. § 1983**
**SUPERVISORY LIABILITY**
**AMICAR MALDONANDO MONTENGUDO v. COLONEL PARIS**

100.    All preceding paragraphs of this Complaint are fully incorporated herein by

reference.

101.    Defendant Paris is the final policymaker for the Pennsylvania State Police.

102.    Plaintiff believes and therefore avers that Defendant Paris has

systematically failed to discipline law enforcement officers, including the

individually named Defendants, who have conducted pretextual car stops,

mismanaged testing of suspected narcotics, and failed to exercise due

diligence before requesting warrants for arrest.

103.    The failure of Defendant Paris to adopt adequate customs and provide

adequate training to his law enforcement officers regarding the requirements

for adequate proper cause to support vehicle stops and issuance of warrants

for arrest was deliberately indifferent to the constitutional rights of its

citizens and was the proximate cause of Plaintiff's injuries.

104.    The need for Defendant Paris to train, supervise, and/or discipline its law

enforcement officers and/or to adopt or enforce a policy, practice, or custom of

respecting constitutional limits is obvious which risks severe deprivation of

liberty.

105.    Said training and/or custom, or lack thereof, violates the Fourth Amendment

as applied to the States through the Fourteenth Amendment of Constitution

of the United States, the Laws of the United States, and of the
Commonwealth of Pennsylvania.

106. Plaintiff believes and therefore avers that Defendant Paris was aware of the
aforementioned lack of training and/or custom for a substantial period of
time, and despite that knowledge, failed to take steps to terminate said
practices, failed to properly supervise or discipline officers, including the
individually named Defendants, failed to effectively train law enforcement
officers with regard to the legal limits on their authority, and instead
sanctioned, acquiesced, and/or was deliberately indifferent to the policies,
practices, and customs that violated the constitutional rights of individuals
such as Plaintiff, with regard to the proper exercise of due diligence
necessary before issuance of a warrant for arrest.

107. Plaintiff believes and therefore avers that Defendant Paris knew or should
have known of the aforementioned custom, as well as the inadequate
training, and discipline of law enforcement officials of the Pennsylvania State
Police, including the individually named Defendants, and deliberately,
intentionally, and knowingly failed to take steps to terminate or limit said
policies, practices, and customs, including but not limited to:

   a. Failure to provide adequate training, supervision, and discipline to
      officers regarding not conducting pretextual stops without reasonable
      suspicion;

   b. Failure to provide adequate training, supervision, and discipline to
      officers regarding proper protocol for identifying unknown substances
      retrieved at traffic stops;

   c. Failure to provide adequate training, supervision, and discipline to
      officers regarding the proper measure of probable cause and exercise of
      due diligence required prior to issuing a warrant for arrest;

    d.   Failure to provide adequate training, supervision, and discipline to officers regarding the proper action to take when presented with exculpatory evidence;

    e.   Failure to provide clear, concise, and appropriate guidance, including directives, on the aforementioned constitutional obligations of law enforcement officers;

    f.   Failure to conduct systematic and complete internal affairs investigations and commanding officers' investigations resulting in appropriate and documented corrective actions at all levels of the Pennsylvania State Police;

    g.   Failure to prevent Plaintiff from being injured and violating Plaintiff's constitutional rights by members of the Pennsylvania State Police where Defendant knew or should have known of the dangerous propensities of said members and the systemic problem of police abuses in the departments; and

    h.   Failure to properly test, train, and/or select its officers with regards to proper protocol to follow prior to requesting a warrant for arrest.

108.   The deliberate indifference of the aforementioned training and/or customs, or lack thereof, was a proximate cause of Plaintiff's injuries and losses and the violation of his constitutional rights.

109.   By failing to take action to stop or limit and/or by remaining deliberately indifferent to the systematic abuses which occurred in accordance with and as a direct and proximate result of the policy, Defendant Paris condoned, acquiesced in, participated in, and perpetrated the custom in violation of the plaintiff's rights under the Fourth Amendment of the Constitution of the United States, the Laws of the United States and of the Commonwealth of Pennsylvania and in violation of 42 U.S.C. § 1983.

110.   The plaintiff believes and therefore avers, that Defendant Paris has for many years maintained an inadequate system of review of claims regarding improper arrests due to pretextual car stops and improper warrants, which the system has failed to identify instances of the use of said behavior to

discipline, more closely supervise or retrain officers who, in fact, do not sufficiently demonstrate probable cause for arrests.

111. Upon information and belief, the systematic deficiencies include, but are not limited to:

   a. The preparation of criminal complaints and affidavits of probable cause with incorrect information and lack of supporting evidence;

   b. The issuance of arrest warrants which rely solely on the word of Pennsylvania State Police Troopers involved in the incident, and systematically failing to require additional supporting evidence;

   c. The issuance of arrest warrants which omit factual information and physical evidence that contradicts the accounts of the officers involved; and

   d. Failure to review criminal complaints and affidavits of probable cause by responsible superior officers for accuracy or completeness and accepting the conclusions which were unwarranted by the evidence or contradicted by such evidence.

**WHEREFORE**, pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff Amicar Maldonando Montengudo demands compensatory damages against Defendant Colonel Paris to fairly and adequately compensate Plaintiff, in addition to interest, costs, attorney's fees, delay damages, and all other appropriate relief.

### COUNT IV – PENNSYLVANIA COMMON LAW
### FALSE ARREST/ FALSE IMPRISONMENT
### AMICAR MALDONADO MONTENGUDO v. TROOPERS PRONICK AND LONG

112. All preceding paragraphs are incorporated fully herein by reference.

113. Defendants Pronick and/or Long, acting outside the scope of their employment, lacked reasonable suspicion to stop, as well as probable cause to obtain a warrant authorizing the arrest of Plaintiff.

114. Defendant Long intentionally or recklessly mis-calibrated the MX908 and provided false results to Defendant Pronick regarding the testing.

115.    In the warrant affidavit, Defendant Pronick made false statements and/or material omissions.

116.    Defendant Pronick made those false statements and/or omissions either deliberately or with reckless disregard for the truth.

117.    Defendant Pronick's false statements and/or omissions were material, or necessary, to the finding of probable cause for the arrest warrant.

118.    Due to the above, Plaintiff suffered a deprivation of liberty.

119.    The above-described acts and failures to act were so malicious, intentional, reckless, and/or recklessly indifferent to Plaintiff's rights and well-being that the imposition of punitive damages is warranted.

**WHEREFORE**, Plaintiff Amicar Maldonado Montengudo, pursuant to Pennsylvania common law, demands compensatory and punitive damages against Defendants State Trooper Pronick and Long, jointly and/or severally, to fairly and adequately compensate Plaintiff and punish and deter such conduct on the part of Defendants and others similarly situated, in addition to interest, costs, attorney's fees, delay damages, and all other appropriate relief.

### COUNT IV – PENNSYLVANIA COMMON LAW
### MALICIOUS PROSECUTION
### AMICAR MALDONADO MONTENGUDO v. TROOPERS PRONICK AND LONG

120.    All preceding paragraphs of this Complaint are fully incorporated herein by reference.

121.    Defendants Pronick and/or Long, acting outside the scope of their employment, intentionally, maliciously, and without probable cause, caused the Plaintiff to be subject to criminal proceedings.

122.    Plaintiff's criminal charges were all terminated in his favor.

123.    Defendants Pronick and/or Long had facts and circumstances available to them that would not warrant a prudent person to believe that probable cause existed to arrest Plaintiff and charge him with criminal offenses.

124.    Defendants Pronick and/or Long submitted an arrest warrant and criminal charges against Plaintiff prior to having a reliable test of the baking soda seized from Plaintiff's lunch bag.

125.    As a direct and proximate result of the malicious and intentional actions of Defendants Pronick and/or Long, Plaintiff suffered a deprivation of liberty and damages which are described above.

126.    The above-described acts and failures to act were so malicious, intentional, reckless, and/or recklessly indifferent to Plaintiff's rights and well-being that the imposition of punitive damages is warranted.

**WHEREFORE**, Plaintiff Amicar Maldonado Montengudo, pursuant to Pennsylvania common law, demands compensatory and punitive damages against Defendants State Troopers Pronick and Long, jointly and/or severally, to fairly and adequately compensate Plaintiff and punish and deter such conduct on the part of Defendants and others similarly situated, in addition to interest, costs, attorney's fees, delay damages, and all other appropriate relief.

ABRAMSON & DENENBERG, P.C.

/s/ ***Alan E. Denenberg***
Alan E. Denenberg, Esq.
Pennsylvania ID No. 54161
1315 Walnut Street, Suite 500
Philadelphia, PA 19107
(215) 546-1345
adenenberg@adlawfirm.com
*Counsel for Plaintiff*

/s/ ***Richard L. Stutman***
Richard L. Stutman, Esq.
Pennsylvania ID No. 53758
1315 Walnut Street, Suite 500
Philadelphia, PA 19107
(215) 546-1345
rstutman@adlawfirm.com
*Counsel for Plaintiff*